DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Lockheed Martin Corporation, ) | |
| ) | CASE NO. 5:10 CV 673 |
| Plaintiff, ) | |
| ) | |
| v. ) | O R D E R |
| ) | |
| Goodyear Tire and Rubber Company, et al. ) | |
| ) | |
| Defendants. ) | |
| ) | |

This case is presently before the Court on the motion of defendants Travelers Indemnity Company and Travelers Casualty & Surety Company (collectively "Travelers") for reconsideration of the Court's ruling denying Travelers' motion to dismiss Counts 4-7 of plaintiff's first amended complaint. ECF 25 and 23. The Court agreed to reconsider its prior ruling on those counts, and established a briefing schedule in that regard. Subsequently, Travelers filed a memorandum in further support of its motion to dismiss counts 4-7 (ECF) 39, which plaintiff Lockheed Martin opposed (ECF 44), and to which Travelers replied (ECF 47).

Also before the Court is plaintiff Lockheed Martin's motion to certify a question of Ohio insurance law to the Ohio Supreme Court. ECF 33. Travelers and defendant Goodyear Tire & Rubber Company (Goodyear Tire) have opposed plaintiff's motion to certify (ECF 37 and 38, respectively), to which plaintiff Lockheed Martin replied (ECF 40), and Goodyear filed a sur-reply (ECF 43).

(5:10 CV 673)

Further, Lockheed Martin filed supplemental authority in connection with the Court's reconsideration of Travelers' motion to dismiss Counts 4-7 and in connection with Lockheed Martin's motion to certify.  ECF 51.  Travelers responded, arguing that Lockheed Martin's new authority, *Federal Ins. Co. v. Executive Coach Luxury Travel*,[1] undermines rather than supports Lockheed Martin's motion for coverage under the Aetna and Travelers Policies.  ECF 53.

For the reasons contained herein, plaintiff Lockheed Martin's motion to certify a question of Ohio insurance law to the Ohio Supreme Court is DENIED.  Further for the reasons contained herein, Travelers' motion to dismiss Counts 4-7 of the first amended complaint (ECF 15), upon reconsideration, is GRANTED.

## I.  FACTUAL BACKGROUND

In 1928-1929, the Goodyear Zeppelin Corporation (GZC), a subsidiary of Goodyear, constructed an airship factory and dock (hangar), now known as the Airdock, at 1210 Massillon Road in Akron, Ohio.  The external surface of the Airdock was composed in part of steel sheets.  The steel sheets contained a corrugated steel core, which was covered with protective coatings containing polychlorinated biphenlys, or "PCBs."  On December 5, 1939, the Goodyear Aircraft Corporation (GAC) was incorporated to carry on the work of the GZC, and the Airdock was used to manufacture aircraft and aircraft component parts.

In 1963, the GAC was renamed Goodyear Aerospace Corporation (Goodyear Aerospace).  Pursuant to a January 12, 1987 Asset Purchase Agreement (APA), Loral Corporation purchased certain assets of Goodyear Aerospace and Goodyear Tire, which included

---

[1]  Slip. Op. No. 2010-Ohio-6300.

(5:10 CV 673)

the Airdock and a portion of nearby property known as Haley's Ditch.[2]  The transfer of the Airdock and Haley's Ditch to Loral by Goodyear Aerospace and Goodyear Tire pursuant to the APA took place in 1989.  Ultimately, the Airdock and portions of Haley's Ditch owned by Loral became owned by plaintiff Lockheed Martin when Loral merged into Lockheed Martin in 1997.

Sometime after it acquired the Airdock and portions of Haley's Ditch through the merger of Loral, Lockheed Martin conducted sampling at the Airdock site and Haley's Ditch site and determined that the sites were contaminated with PCB's in the soil, pavement, catch basin sediment, stream channel and flood plain proximate to the Airdock and Haley's Ditch.  Lockheed Martin reported the contamination to the United States Environmental Protection Agency (USEPA) and engaged in various remediation activities with both federal and state environmental officials pursuant to the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA) and Ohio's Voluntary Action Program (VAP).  Lockheed Martin is strictly liable under CERCLA for remediation of the Airdock and Haley's Ditch sites.

During the time periods relevant to this litigation, Aetna Casualty & Surety Company/Aetna Life and Casualty Company (Aetna) issued multiple general liability policies to defendant Goodyear Tire and/or Goodyear Tire's predecessors, subsidiaries or divisions (Aetna Policies) for the Airdock/Haley's Ditch sites.[3]  Aetna ultimately became Travelers Casualty &

---

[2] Haley's Ditch is located approximately 3500 feet north of the Airdock.  According to the first amended complaint, defendant Goodyear Tire operated the Airdock site either directly or through its subsidiaries from 1929-1987, and owned the Airdock site during the periods from 1940-1948 and from 1966-1989.  Goodyear Tire owned other portions of Haley's Ditch until 2007.

[3] A list of the Aetna Policies which plaintiff alleges were so issued are contained in the First Amended Complaint at par. 73 and 96.

3

(5:10 CV 673)

Surety Company. Plaintiff alleges that the Aetna Policies were assumed by and/or assigned to Travelers Casualty & Surety Company, and that the obligations under the Aetna Policies are Travelers' obligations. Travelers Indemnity Company also issued multiple general liability policies directly to defendant Goodyear Tire and/or Goodyear Tire's predecessors, subsidiaries or divisions (Travelers Policies) for the Airdock/Haley's Ditch sites.[4] The Aetna Policies and Travelers Policies are collectively referred to as the Policies.

## II. PROCEDURAL BACKGROUND

A. <u>First Amended Complaint</u>

Plaintiff's first amended complaint contains seven counts. Counts 1, 2 and 3 assert claims against Goodyear Tire for recovery of or contribution to response costs incurred by Lockheed Martin in connection with the Airdock site and the Haley's Ditch site pursuant to the CERCLA and VAP. Lockheed Martin also seeks a declaratory judgment that Goodyear Tire is liable for response costs that plaintiff incurs in the future at the Airdock and Haley's Ditch sites.

In Counts 4, 5, 6 and 7 of plaintiff's first amended complaint relates to the Policies. Plaintiff claims that the Policies were issued to Goodyear Tire to respond to claims concerning the Airdock and Haley's Ditch sites, and because plaintiff is strictly liable for evaluation and remediation of the Airdock and Haley's Ditch sites, plaintiff is entitled to use the Polices for the cost of it response. Counts 4 and 5 seek declaratory judgment regarding Lockheed Martin's right to utilize the Policies in connection with its response costs for the Airdock and Haley's Ditch

---

[4] A list of the Travelers Policies which plaintiff alleges were so issued are contained in the First Amended Complaint at par. 85 and 113.

(5:10 CV 673)

sites. Counts 6 and 7 sound in breach of contract on the grounds that monies paid by the Policies to Goodyear Tire in connection with environmental issues at the Airdock and Haley's Ditch sites has deprived Lockheed Martin of the benefit of insurance coverage under the Policies.

B.  <u>Defendants' Motion to Dismiss</u>

All defendants filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF 15. Goodyear Tire's motion asserted that Counts 1-3 of Lockheed Martin's first amended complaint should be dismissed on the basis of the APA between Goodyear and Lockheed Martin's predecessor-in-interest, Loral, which expressly required that Lockheed Martin assume all liabilities of GAC and indemnify Goodyear for any claims arising subsequent to the closing date of the transaction, and that Counts 1-2 should be dismissed for failure to state a plausible claim under CERCLA.

Travelers motion asserted that Counts 4-7 of Lockheed Martin's first amended complaint should be dismissed because there is no contractual relationship between Travelers and Lockheed Martin - i.e. the insurance policies at issue are between Goodyear and Aetna/Travelers, and because under the terms of the APA Lockheed Martin expressly disclaimed any rights to the Policies and cannot have any interest in the Policies.

The Court denied defendants' motion to dismiss without prejudice to defendants reasserting their arguments in the context of summary judgment and scheduled a case management conference. ECF 23.

C.  <u>Travelers' Motion for Reconsideration and Lockheed Martin's Motion to Certify</u>

Before the case management conference, Travelers moved for reconsideration of the

5

(5:10 CV 673)

Court's Memorandum Opinion denying Counts 4-7.  Plaintiff's claims against Travelers are based on Ohio insurance law and contract law.  After Travelers moved for reconsideration, Lockheed Martin filed a motion requesting that the Court certify to the Ohio Supreme Court the question of Ohio insurance law as to whether a corporate owner of contaminated property which is strictly liable under federal environmental statutes may assert rights to general liability insurance policies issued to the former owner and operator.

Both motions were the subject of discussion at the case management conference.  At the case management conference, the Court agreed to reconsider its ruling on Travelers' motion to dismiss Counts 4-7, and established a briefing schedule in that regard.  In addition, a briefing schedule was established in regard to Lockheed Martin's motion to certify.  See ECF 34.  All briefing is complete.

### III.  ANALYSIS

Lockheed, encouraged by the decision in *Pilkington North America, Inc. v. Travelers Casualty & Surety Co.*, 112 Ohio St. 3d 482 (Ohio 2006) advocates in opposition to Traveler's motion to dismiss that, as pled, it is entitled to insurance coverage by operation of law for certain environmental liabilities under CERCLA on policies issued by the defendant Travelers to its insured, Goodyear, a predecessor in title to the real estate now owned by Lockheed and subject to the provisions of CERCLA.

Secondly and alternatively, Lockheed suggests that the Court should certify the "operation of law" issue that it has raised to the Ohio Supreme Court as that court did not resolve the "operation of law" issue in Pilkington, supra.

6

(5:10 CV 673)

After reviewing the comprehensive briefs filed by counsel, the Court agrees with the position of Travelers that the "operation of law" argument advanced by Lockheed fails.

In summarizing its position, counsel for Travelers opines (ECF 39, pgs. 17-18) as follows:

> If Lockheed, a stranger to the insurance contracts between Travelers and Goodyear, were allowed to access Goodyear's policies by "operation of law" simply because Lockheed has independently become liable for the Sites under CERCLA, all of the evils identified by the Ohio Supreme Court in *Pilkington* would come to pass. Goodyear would face the probability that the policy limits which it purchased from Travelers would be eroded by payments to a new "additional insured" -- Lockheed -- who did not emerge until decades after the policies had been issued. Worse yet, Goodyear would face the possibility that untold other "additional insureds" who also have CERCLA liability for the Sites would emerge from the woodwork to devour its coverage. Travelers, on the other hand, would face the probability that it would now be required to pay for the defense of the new "additional insured" -- Lockheed -- and risk that it would have to defend multiple other PRPs who have CERCLA liability for the Sites. Travelers could well find itself in the bizarre situation of paying for the defense of multiple adverse PRPs who are fighting among themselves about liability for the Sites. Adopting the "operation of law" approach here would toss the contracts negotiated by Travelers and Goodyear decades ago out the window and deprive Goodyear of the coverage it bargained for, while imposing on travelers the substantially increased burden of defending additional parties.
>
> In the CERCLA context, adopting Lockheed's notion that insurance automatically transfers by "operation of law" to any successor owners of the property simply by virtue of their becoming liable for its environmental liabilities would create an absurd regime in which an insurer who issued a general liability policy to the property owner many years ago automatically becomes the insurer for every single subsequent buyer of the property. Without a crystal ball, how could an insurer underwrite such a risk and what premium could the insurer possibly charge?

7

(5:10 CV 673)

> General liability insurance policies simply do not "run with the land."
>
> No public policy reason exists for overriding the contracts that Travelers and Goodyear negotiated many years ago. Here, Goodyear remains potentially subject to CERCLA liability for the remediation of the Sites. If Lockheed has already paid for the cleanup, it has recourse against Goodyear for contribution. Whether Goodyear itself performs the remediation or pays contribution to Lockheed for that work, it is the party who bought the coverage, Goodyear -- not Lockheed -- that has recourse to the Travelers Policies.

## IV. CONCLUSION

The Court is persuaded by Travelers' analysis. The motion of Travelers to dismiss is GRANTED.

The alternative suggestion of Lockheed to certify the issue to the Ohio Supreme Court is DENIED.

IT IS SO ORDERED.

| | |
|---|---|
| February 11, 2011 | /s/ David D. Dowd, Jr. |
| Date | David D. Dowd, Jr. |
| | U.S. District Judge |