DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Lockheed Martin Corporation, | ) |
| | ) CASE NO. 5:10 CV 673 |
| Plaintiff, | ) |
| | ) |
| v. | ) MEMORANDUM OPINION |
| | ) |
| The Goodyear Tire & Rubber Company, et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |

I. INTRODUCTION

Plaintiff Lockheed Martin ("Lockheed") is the owner of a large dirigible hangar ("Airdock") located in Akron, Ohio, which it acquired in 1997 as a result of a merger with Loral Corporation ("Loral").[1] After Lockheed acquired ownership of the Airdock, it was discovered that the Airdock and certain surrounding property (collectively, "Airdock Site"), and drainage ditch that runs through the Airdock Site ("Haley's Ditch Site"), was contaminated with polychlorinated biphenyls ("PCBs").

Lockheed claims that these sites were contaminated with PCBs from the original roofing and siding material installed on the Airdock during its construction in 1929 by Goodyear Zeppelin Corporation (GZC). Defendant Goodyear Tire & Rubber Company ("Goodyear") purchased the Airdock from GZC in 1940, and owned the property until 1987 when the property was transferred by Goodyear to Lockheed's predecessor-in-interest, Loral, pursuant to an asset

---

[1] Loral acquired the Airdock from Goodyear in 1987 through an asset purchase agreement, which is discussed in greater detail later in this memorandum opinion.

(5:10 CV 673)

purchase agreement ("APA") as part of the acquisition of Goodyear's wholly-owned subsidiary, Goodyear Aerospace Corporation ("GAC").

Lockheed has spent tens of millions of dollars remediating the PCB contamination, and anticipates tens of millions more will be spent for future remediation. Lockheed claims that Goodyear Tire, and not Lockheed, is responsible for those remediation costs, and brings the instant action to recover those costs under various federal and state causes of action.[2]

In its second amended complaint, Lockheed asserts a total of eight claims. For its first three claims, plaintiff seeks recovery for its PCB response costs: Claim 1 for past and future Airdock Site CERCLA[3] response costs and contribution; Claim 2 for past and future Haley's Ditch Site CERCLA response costs and contribution; and Claim 3 for past and future VAP[4] response costs. Plaintiff also asserts four alternative claims: Claim 4 for negligent misrepresentation for failure to disclose three lease[5] agreements; Claim 5 for indemnification and

---

[2] Based on Lockheed's federal CERCLA claim, this Court has subject matter jurisdiction under 28 U.S.C. § 1331, and supplemental jurisdiction over Lockheed's state law claims.

[3] Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") (42 U.S.C. § 9601, *et seq.*).

[4] Ohio's Voluntary Action Program ("VAP") (Ohio Revised Code Chapter 3746).

[5] ECF 75, par. 87: "Lockheed Martin brings this claim in the alternative against Goodyear Tire. If the Court finds that Lockheed Martin is responsible for Goodyear Tire liability pursuant to the Lease Agreements . . . then Lockheed Martin seeks to recover its damages for Goodyear Tire's failure to disclose these Lease Agreements in connection with the January 12, 1987 Asset Purchase Agreement . . ."

Goodyear leased the Airdock and surrounding property to its wholly-owned subsidiary, Goodyear Aerospace Corporation ("GAC") (or GAC's predecessor Goodyear Aircraft Corporation), prior to the acquisition of the Airdock by Loral in 1987. The terms of the three Goodyear-GAC leases at issue in this case ("Leases" or "Lease Agreements") are more fully discussed, *infra*.

2

(5:10 CV 673)

damages and breach of contract for failure to disclose the Leases;[6] Claim 6 for equitable estoppel for failure to disclose the Leases;[7] Claim 7 for breach of contract for failure to provide insurance coverage.[8] In its last claim, plaintiff seeks declaratory relief: Claim 8 for a declaration that Lockheed did not assume Goodyear's liabilities through the Leases.[9] ECF 75. It is Goodyear's position that Lockheed's claims are barred by the terms of the APA and the Leases.[10]

Presently before the Court are the parties' cross-motions for summary judgment on the interpretation of the APA and the legal effect of the Leases.[11] Goodyear moves for summary

---

[6] ECF 75, par. 118: "Lockheed Martin brings this claim in the alternative against Goodyear Tire. If the Court finds that Lockheed Martin is responsible for Goodyear Tire liability pursuant to the Lease Agreements, then Lockheed Martin seeks indemnification for Goodyear Tire's breach of the APA relating to Goodyear Tire's failure to disclose the Lease Agreements."

[7] ECF 75, par. 147: "Lockheed Martin brings this claim against Goodyear Tire to prevent Goodyear from using the undisclosed Lease Agreements as a basis for Lockheed Martin's liability for the Airdock Site."

[8] ECF 75, par. 178: "Lockheed Martin brings this claim alternatively against Goodyear Tire. If the Court finds that Lockheed Martin is responsible for Goodyear Tire liabilities via the 1940, 1946, 1980 and 1984 leases between Goodyear Tire and GAC, and/or that Loral and hence Lockheed Martin assumed Goodyear Aircraft and Goodyear Aerospace's indemnification obligations to Goodyear Tire, then Lockheed Martin seeks to recover its damages for Goodyear Tire's failure to provide Lockheed Martin access to Goodyear's Aerospace's insurance rights as provided in the 1940, 1946, 1980 and 1984 leases. This failure constitutes a breach of the APA."

[9] ECF 75, par. 196: "Lockheed Martin brings this claim against Goodyear Tire to seek a declaration from the Court that Lockheed Martin is not liable for Goodyear Aerospace's obligations to Goodyear Tire under the Lease Agreements based on Goodyear Tire's failure to disclose the Lease Agreements to Lockheed Martin and/or the Lease Agreements unenforceability."

[10] Goodyear contends that under the Leases, GAC was responsible for the maintenance and repair of the Airdock, and that GAC's liabilities under the Leases became Loral's liabilities pursuant to the terms of the APA when Loral acquired GAC from Goodyear. Lockheed asserts that the Leases cannot be used as a basis for attaching liability for the Airdock to it because the Leases were not disclosed to Loral prior to the APA, and because the Leases are unenforceable contracts that had been terminated, conflict with the APA, or are void for lack of consideration or unconscionability.

[11] Pending motions related to the parties' cross motions for summary judgment are Lockheed's Rule 56 motion with respect to the Goodyear Tire's "unsupported statements" and the affidavit of Anthony Miller (ECF 82), and Goodyear Tire's motion to strike the affidavit of David Sweet (ECF 99).

3

(5:10 CV 673)

judgment on all claims of plaintiff's second amended complaint. ECF 77. Lockheed opposed defendant's motion (ECF 81) and Goodyear replied (ECF 83).

Lockheed moves for partial summary judgment that, as a matter of law, Lockheed did not assume any of Goodyear's liabilities with respect to the Airdock through Loral's acquisition of GAC. ECF 78. Goodyear opposed plaintiff's motion (ECF 80) and Lockheed replied (ECF 84).

The Court heard oral argument on the pending motions, and the parties subsequently filed supplemental briefs in support of their motions. *See* ECF 105.

For the reasons contained herein, Goodyear's motion for summary judgment with respect to plaintiff's second amended complaint is GRANTED in part as to Claims 1, 2 and 3. Lockheed's motion for partial summary judgment is DENIED.

## II. FACTUAL AND PROCEDURAL BACKGROUND

A.  <u>Airdock History</u>

Beginning in 1928, Goodyear Zeppelin Corporation ("GZC"), an entity that is not a party to this suit, built the Airdock for the manufacture of lighter-than-air ships on a parcel of land that would subsequently become known as the Akron Complex. As part of this construction, GZC installed the roofing and siding panels that contained PCBs. In 1940, GZC sold its real and personal property to Goodyear and thereafter dissolved.

In 1939, Goodyear Aircraft Corporation[12] was incorporated to manufacture airplane parts. GAC was a wholly-owned subsidiary of Goodyear. Shortly after purchasing the Akron Complex

---

[12] Goodyear Aircraft Corporation was renamed Goodyear Aerospace Corporation in 1963. Throughout this opinion, GAC will be used to refer to both.

4

(5:10 CV 673)

from GZC in December 1940, Goodyear leased the property to GAC[13] and continued to do so through a series of leases until Loral acquired the property 1987. Loral and Lockheed later merged.

      B.      <u>Loral Acquires Airdock by Asset Purchase Agreement</u>

In November 1986, Goodyear decided to divest GAC, and Loral emerged as the prospective purchaser. Goodyear and Loral first negotiated the purchase as a stock sale, which was signed by the parties on January 12, 1987. Shortly thereafter, at Loral's request the parties agreed to recast the transaction as an asset sale, which the parties closed on March 13, 1987, and which "amend[ed], supersede[d] and, with GAC, restate[d]" the stock sale. ECF 77-3 at 1.

---

[13] Pursuant to the Leases, GAC was responsible for maintenance of the Akron Complex, including the Airdock. As stated in the first lease, signed December 31, 1940:

> 1. The Lessee, its successors and assigns, shall at all times maintain the entire demised premises and any improvements or buildings or structures thereon, interior and exterior, including the sidewalks and the roofs, and including all glass and any and all heating, lighting, plumbing and toilet fixtures and equipment, and any and all other equipment and/or fixtures and/or property covered by this lease, in good, proper, safe and suitable order, repair and condition, at Lessee's own cost and expense; and the Lessee shall at all times, at Lessee's own cost and expense, make any and all repairs, alterations, additions and improvements to the said premises, realty and improvements, or any part thereof, which may be required or become necessary, pursuant or in conformity to or by reason or virtue of any statute, ordinance, regulation and/or order pertaining to police, fire, sanitary and/or other supervision, control or protection; and at the termination of this lease Lessee will surrender the leased premises and all improvements thereon and all property covered hereby in substantially as good condition as when received, or, in the case of added improvements, as when constructed, reasonable wear and tear and damage by fire, the elements and unavoidable casualty excepted.

ECF 77-4 at 3. The other Leases contain substantially similar language. *See* ECF 77-5 at 2-3; ECF 77-6 at 2.

The parties dispute whether the Leases were available to Loral during the due diligence period leading up to the execution of the APA. It is Loral's position that the Leases were never available for Loral's inspection, and not provided by Goodyear or GAC, prior to the execution of the APA.

5

(5:10 CV 673)

The preamble of the APA provides as follows:

> **THIS AMENDED AND RESTATED AGREEMENT FOR PURCHASE AND SALE OF ASSETS (the "Agreement")** is made and entered into as of the 12th day of January, 1987, by and among LORAL CORPORATION, a New York corporation ("Loral"), GOODYEAR AEROSPACE CORPORATION, a Delaware corporation ("GAC") and THE GOODYEAR TIRE & RUBBER COMPANY, an Ohio corporation ("Goodyear") and the sole stockholder of GAC.

ECF 77-3 at 1.

The APA transferred GAC's assets and liabilities primarily through two sections, § 2.1 and § 2.2.

APA § 2.1 provides in pertinent part as follows:

> 2.1 <u>Acquisition of Assets</u>
>
> Except as provided herein, GAC, and to the extent necessary, Goodyear hereby agree, on the Closing Date, to convey, transfer, assign and deliver to Loral and Loral agrees, on the Closing Date, to acquire and accept as hereinafter provided, all the assets, properties, business and good will of GAC of every kind and description, wherever located, including, without limitation . . .

ECF 77-3 at 6.

APA § 2.2 provides in pertinent part as follows:

> 2.2 <u>Assumption of Liabilities</u>
>
> From and after the Closing Date, Loral shall assume and Loral hereby agrees to pay, perform and discharge when due all debts, obligations, contracts and liabilities of GAC of any kind, character or description whether accrued, absolute, contingent or otherwise, whether now or hereinafter arising, provided, however, that Loral shall not assume . . . (iii) any liabilities arising out of actions unrelated to the transactions contemplated hereby done or permitted to be done by Goodyear after the Closing Date . . .

6

(5:10 CV 673)

ECF 77-3 at 7.

In addition, the APA contains an "entire agreement" clause, which provides as follows:

> 9.2  Entire Agreement
>
> This Agreement sets for the understanding among the parties concerning the subject matter of this Agreement and incorporates all prior negotiations and understandings. There are no covenants, promises, agreements, conditions or understandings, either oral or written, between them relating to the subject matter of this Agreement other than those set forth herein. . . . .

ECF 77-3 at 67.

The Airdock was owned by Goodyear and leased to GAC prior to the APA. Goodyear transferred the Airdock to Loral as part of Loral's acquisition of assets pursuant to the APA.

Following transfer of the Airdock and the other assets of GAC, Loral owned and operated the Airdock from 1987 to 1997, at which time Loral merged with Lockheed. *See* ECF 75 at 3-4. Through this merger, Lockheed assumed Loral's rights and responsibilities under the APA.

C.  Lockheed Discovers and Remediates PCB's at Airdock

At the time of the APA, it appears that no party had knowledge of the presence of PCBs in the Airdock roof and siding. As a result of sampling, Lockheed later discovered PCB contamination at the Airdock Site and Haley's Ditch Site. Lockheed notified EPA of this contamination, and in 2005 entered into a Consent Agreement and Final Order under the Toxic Substances Control Act ("TSCA"). ECF 75 at 9. Lockheed has remediated the Airdock Site and Haley's Ditch, though Lockheed states that a final requirement remains to remove and dispose of the Airdock's siding once its use of the Airdock ceases. ECF 75 at par. 38.

(5:10 CV 673)

D.     The Instant Action

Lockheed filed the present action against Goodyear in 2010. The original complaint and first amended complaint (ECF 1 and 7) included claims for insurance coverage from Goodyear's insurer, defendants Travelers Casualty and Surety Company and Travelers Indemnity Company. Lockheed's claims against the Travelers defendants were previously dismissed. *See* ECF 57.

With respect to Lockheed's first amended complaint, Goodyear filed an answer and amended answer, asserting counterclaims under the APA and CERCLA. ECF 27 and 74. Subsequently, Lockheed filed a second amended complaint, adding claims related to the Leases. ECF 75. Upon joint motion of the parties, the Court stayed responsive pleadings to Lockheed's second amended complaint pending resolution of the parties' cross-motions for summary judgment with respect to the second amended complaint.[14] ECF 77, 78 and 79. As a consequence, there are no counterclaims pending against Lockheed.

### III.  LAW

A.     Summary Judgment Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, "the inferences to be drawn from the underlying facts contained in [affidavits, pleadings, depositions, answers to interrogatories, and admissions] must be viewed in the light most favorable to the party opposing the motion." *U.S. v. Diebold,*

---

[14] With respect to plaintiff's claims relating to the Leases in Lockheed's second amended complaint, the parties have conducted discovery and fully briefed the issues in their motions for summary judgment.

8

(5:10 CV 673)

*Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962).  However, the adverse party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

Rule 56 requires the nonmoving party who has the burden of proof at trial to oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves[.]"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  General averments or conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes.  *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990).  Nor may a party "create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts . . . earlier deposition testimony."  *Reid v. Sears Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986) (*citing Biechele v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir. 1984)); *but see Baer v. Chase*, 392 F.3d 609, 623-26 (3d Cir. 2004) (noting that a so-called "sham" affidavit need not be disregarded if there is "independent evidence in the record to bolster [the] otherwise questionable affidavit").  Further, "'[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'"  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989) (*quoting Anderson v. Liberty Lobby*, 477 U.S. at 252).

In sum, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial — whether, in other words, there are genuine factual issues that properly can

9

(5:10 CV 673)

be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby*, 477 U.S. at 250.  Put another way, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 578 (6th Cir. 2003) ("[t]he conflicting proof and the inferences that can be drawn therefrom raise genuine issues of material fact that preclude the grant of summary judgment").

      B.      Contract Interpretation

           1.      *Governing Law*

According to the APA, Ohio law governs the construction of the contract.  APA § 9.8 provides as follows:

> 9.8      <u>Governing Law</u>
>
> This Agreement shall be governed and construed by the provisions hereof and in accordance with the laws of the state of Ohio applicable to agreements to be performed in the State of Ohio.

ECF 77-3 at 69.

           2.      *Ohio Contract Law*

"Under Ohio law, the interpretation of written contract terms, including the determination of whether those terms are ambiguous, is a matter of law for initial determination by the court." *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 763 (6th Cir. 2008) (applying Ohio law).  It is a general canon of contract construction that courts should not interpret a contract so as to render clauses superfluous.  *See Saunders v. Mortensen*, 101 Ohio St. 3d 86, 89 (Ohio

(5:10 CV 673)

2004) ("We have long held that a contract is to be read as a whole and the intent of each part gathered from a consideration of the whole. If it is reasonable to do so, we must give effect to each provision of the contract.") (citing *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361, 678 N.E.2d 519 (Ohio 1997)). When interpreting a contract, and when determining whether contractual language is ambiguous, "the contract must be construed as a whole" in order to give "reasonable effect to every provision in the agreement." *Id.* (quoting *Tri-State Group, Inc. v. Ohio Edison Co.,* 151 Ohio App.3d 1, 9 (2002) and *Stone v. Nat'l City Bank*, 106 Ohio App. 3d 212, 221 (1995)). Contract language is ambiguous when its meaning cannot be determined from the four corners of the agreement, or when the language at issue is subject to two or more reasonable interpretations. *Savedoff,* 524 F.3d at 763 (quoting *Covington v. Lucia*, 151 Ohio App. 3d 409, 414 (2003)). Only after a district court determines that the contract language at issue is ambiguous as a matter of law may the court consider extrinsic evidence to interpret the language of the contract. *Infocision Management Corp. v. Foundation for Moral Law, Inc.,* 2010 WL 4365514 at *5 (N.D. Ohio).

## IV.  ANALYSIS

### A.    Goodyear's Motion for Summary Judgment

In support of its motion for summary judgment on Lockheed's second amended complaint, Goodyear argues that pursuant to the APA, Loral (and therefore Lockheed) assumed all environmental liabilities for the purchased properties (with the exception of certain claims made within two years of closing), including Goodyear's liabilities with respect to the Airdock acquired from Goodyear. Alternatively, Goodyear argues that Lockheed concedes assuming

11

(5:10 CV 673)

GAC's environmental liabilities through the APA, and therefore assumed Goodyear's environmental liabilities for the Airdock by operation of the Leases between GAC and Goodyear.

In opposition, Lockheed contends that the language of the APA unambiguously limits its assumption of liability to GAC, therefore precluding a variety of extrinsic evidence advanced by Goodyear to support the proposition that the parties to the APA intended for Loral to assume Goodyear's liabilities.  With respect to Goodyear's argument that Lockheed acquired GAC's responsibility for Goodyear's liability for the Airdock by operation of the APA and Leases together, Lockheed advances a variety of arguments as to why the Leases should not be used to attach Goodyear liability to Lockheed, including prior non-disclosure of the Leases.

The parties do not contest that the APA is a valid contract and that it is binding on the parties.  For the purposes of the parties' summary judgment motions, the primary issue before the Court is whether Lockheed contractually assumed Goodyear's environmental liabilities for the Airdock through the APA.  For the reasons stated below, the Court concludes that it did.

1. *The parties' positions on the language of the APA*

There are three parties to the APA - Loral, GAC and Goodyear.  The APA contains two primary sections dealing with the transfer of assets and liabilities - §§ 2.1 and 2.2.

Goodyear argues that the language of APA § 2.2 - "Loral shall assume . . . all debts, obligations, contracts and liabilities of GAC of any kind, character, or description whether accrued, absolute, contingent or otherwise, whether now or hereinafter arising . . ." - covers all liabilities associated with the assets of GAC acquired by Loral in connection with Loral's

12

(5:10 CV 673)

acquisition of GAC's business, including the Airdock, which was owned by Goodyear but transferred to Loral as part of the APA.

It is Lockheed's position, however, that the liabilities assumed by Loral pursuant to § 2.2 is unambiguously limited solely to the liabilities of the GAC corporate entity, and excludes Goodyear's liabilities, including the Airdock. Lockheed's rationale for this interpretation is as follows. The preamble to the APA defines Goodyear Aerospace Corporation as "GAC." ECF 77-3 at 1. Based on this defined term, Lockheed argues that the phrase, " liabilities of GAC" can only mean the liabilities of the Goodyear Aerospace Corporation, the corporate entity.

2. *APA § 2.1*

In APA § 2.1, **both GAC and Goodyear** agreed to convey, and Loral agreed to acquire and accept all "**assets, property, business and goodwill of GAC**." Section 2.1 expressly includes conveyances by Goodyear in the description of the "assets of GAC" to be acquired by Loral, and does not limit the acquired "assets of GAC" to those assets conveyed only by GAC the corporate entity. The Airdock was owned and conveyed by Goodyear to Loral as part of Loral's acquisition of the assets of GAC.

APA § 4.4 echoes § 2.1 in that the assets of GAC transferred to Loral pursuant to the APA was not limited to assets and properties owned by GAC, but includes assets and properties "historically used and necessary to the conduct of the business of GAC," which included the Airdock owned by Goodyear. Similarly with respect to APA § 4.12 regarding insurance coverage, this section reflects that the assets of GAC to be acquired by Loral pursuant to the

13

(5:10 CV 673)

APA are not limited to the assets of Goodyear Aerospace Corporation, but included assets and properties acquired from Goodyear.[15]

### 3. *APA § 2.2*

APA § 2.2 - <u>Assumption of Liabilities</u> - provides that:

> "From and after the Closing Date, Loral shall assume . . .[all] liabilities of GAC of any kind, whether now or hereinafter arising, provided however, Loral shall not assume . . . (iii) any liabilities arising out of actions unrelated to the transactions contemplated hereby done or permitted to be done by Goodyear after the Closing Date . . ."

ECF 77-3 at 7-8.

Lockheed argues that Loral's assumption of liabilities in APA § 2.2 is limited to the liabilities of GAC the corporate entity, and does not include any Goodyear liabilities. However, this would require an interpretation of the meaning of the "liabilities of GAC" that is inconsistent with the interpretation of the "assets of GAC" reflected in APA § 2.1. Further, Lockheed's position that § 2.2 does not mention Goodyear liabilities is not supported when § 2.2 is considered in its entirety.

APA § 2.2 provides for both the liabilities Loral assumed and the liabilities Loral did not assume. APA § 2.2(iii) specifically excludes from Loral's assumption of the "liabilities of

---

[15] APA § 4.12 provides in relevant part:

> . . . Loral understands that Goodyear and GAC are under no obligation and will not provide any insurance coverage with respect to the assets purchased by Loral after the Closing Date.

ECF 77-3 at 27.

14

(5:10 CV 673)

GAC" "any liabilities arising out of actions unrelated to the transactions contemplated hereby done or permitted to be done by Goodyear after the Closing Date." Under Lockheed's interpretation that "liabilities of GAC" means that Loral did not assume any Goodyear liabilities at all, the language of APA § 2.2(iii) specifically excluding certain liabilities related to Goodyear would be entirely unnecessary and render APA § 2.2(iii) superfluous.

Lockheed's analysis of the meaning of "liabilities of GAC" focuses narrowly and exclusively on three words in APA § 2.2.  However, Ohio contract law requires the Court to interpret the contract as a whole and so as not to render clauses superfluous, and to harmonize all provisions of a contract.

After examining the APA and harmonizing its provisions so as to give reasonable effect to those provisions without rendering clauses superfluous, the Court concludes as a matter of law that the language of APA with respect to Loral's assumption of "liabilities of GAC" is not ambiguous.  Therefore it is not necessary for the Court to consider extrinsic evidence, including the Leases and the declaration of Miller, in order to interpret the intent of the parties as determined from the language they chose to use in the APA.

While Lockheed agrees with the Court that the APA is unambiguous,[16] Lockheed's interpretation of "liabilities of GAC" is not reasonable when the contract is considered as a whole and its provisions harmonized so as not to render clauses superfluous, as Ohio law requires.  Under that standard, the Court concludes that the only reasonable interpretation of "liabilities of GAC" includes liabilities for assets conveyed by Goodyear to Loral as part of

---

[16] Lockheed argues both in support of its motion for summary judgment and in opposition to defendant's motion for summary judgment that the language of APA § 2.2 is unambiguous.

15

(5:10 CV 673)

Loral's acquisition of the "assets of GAC" pursuant to the APA.  Among those assets was the Airdock.  Accordingly, the Court concludes as a matter of law that pursuant to the APA, Lockheed assumed Goodyear Tire's liabilities in connection with the Airdock, which was transferred to Loral in 1987 as part of the assets of GAC.

Therefore, Goodyear Tire's motion for summary judgment is GRANTED as to Claims 1, 2 and 3 of plaintiff's second amended complaint.

B.      Plaintiff's Motion for Summary Judgment

Plaintiff has moved for summary judgment that, as a matter of law, Loral did not assume Goodyear Tire's liabilities pursuant to the APA.  In support of its motion, plaintiff argues that the unambiguous language of the APA clearly establishes that Loral only assumed GAC's liabilities, that a variety of earlier cases in other courts have reached the same conclusion, and that the doctrine of res judicata/collateral estoppel precludes the relitigation of this issue.  However, none of the prior litigation involved environmental conditions arising from the Airdock and do not bind this Court with respect to the issues in this case.  Based on the Court's analysis of the APA with respect to defendant's motion for summary judgment, plaintiff's motion for summary judgment is DENIED.

(5:10 CV 673)

## V.  MISCELLANEOUS RULINGS

### A. Counts 4, 5, 6 and 7 of the Second Amended Complaint

Counts 4, 5, 6 and 7 of the Second Amend Complaint were pled by Lockheed as alternative claims if the Court determined that Lockheed was responsible for Goodyear Tire liability pursuant to the Lease Agreements.  However, the Court has concluded that Lockheed is responsible for Goodyear Tire liability based on the APA, and did not consider the Lease Agreements.  Accordingly, Lockheed's alternative claims are moot and dismissed as such.

### B. Claim 8

Claim 8 of the second amended complaint seeks a declaration from the Court that Lockheed is not liable for GAC's obligations to Goodyear Tire under the Lease Agreements based on Goodyear Tire's failure to disclose the Lease Agreements to Lockheed and/or unforceability of the Lease Agreements.  ECF 75, par. 196.  The Court originally had jurisdiction over this pendent state law claim pursuant to 28 U.S.C. § 1367 because the state law claim was related to the federal CERCLA claim.  However, because the Court has determined to grant defendant's motion for summary judgment on the second amended complaint with respect to Claims 1, 2 and 3, all claims over which the Court had original jurisdiction will be dismissed.  Therefore, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise pendent jurisdiction over Claim 8, and Claim 8 is dismissed without prejudice.

(5:10 CV 673)

### C. Plaintiff's FRCP 56(d)(1), (c)(1) & (e) Motion and Evidentiary Objections (ECF 82), and Defendant's Motion to Strike the Affidavit of David Sweet (ECF 99)

These motions were filed by the parties in connection with their opposition to the other party's motion for summary judgment.  The Court's ruling on the parties' motions for summary judgment was based entirely on the language of the APA without regard to extrinsic evidence. Accordingly, both plaintiff's motion (ECF 82) and defendant's motion (ECF 99) are moot, and denied as such.

## VI.  CONCLUSION

For the reasons contained herein, Goodyear Tire's Motion for Summary Judgment (ECF 77) is GRANTED in part with respect to Claims 1, 2 and 3 of plaintiff's second amended complaint.

Further for the reasons contained herein, because the Court ruled on Claims 1, 2 and 3 on the basis of the APA alone, plaintiff's alternative Claims 4, 5, 6 and 7 in the Second Amended Complaint are moot and DISMISSED as such.

Further for the reasons contained herein, the Court declines to exercise pendent state jurisdiction over Claim 8 of the second amended complaint, and Claim 8 is DISMISSED WITHOUT PREJUDICE.

(5:10 CV 673)

Further for the reasons contained herein, Plaintiff's Motion for Partial Summary Judgment (ECF 78) is DENIED.

Further for the reasons contained herein, plaintiff's FRCP 56(d)(1), (c)(1) & (e) Motion and Evidentiary Objections (ECF 82), and Defendant's Motion to Strike the Affidavit of David Sweet (ECF 99) are moot, and DENIED as such.

        IT IS SO ORDERED.

| | |
|---|---|
| <u>August 15, 2012</u> | <u>s/ David D. Dowd, Jr.</u> |
| Date | David D. Dowd, Jr. |
| | U.S. District Judge |

19